RENDELL, Circuit Judge,
concurring.
I fully agree with the Majority’s reasoning and result. I write separately to cast the issue before us in a somewhat different light, by expanding upon two aspects of the Majority’s reasoning which, I believe, decide this case. As it crystallized before us at oral argument, Ms. Bond’s challenge has little to do with the validity of the Convention. Her problem lies with the Act. She contends that the structure of federal-state relations is such that the Act should not apply to her actions, namely, conduct involving a domestic dispute that could be prosecuted under state law.[1] But, as the Majority rightly concludes, the Act is a valid exercise of Congress’s Necessary and Proper Power. Moreover, no jurisprudential principle, grounded in federalism or elsewhere, saves her from the Act’s reach.
I consider two questions raised by her argument: What is legally wrong with the Act, which reaches Ms. Bond’s conduct?; and, What is wrong with the Act’s application to Ms. Bond, given the structure of federal-state relations? The answer to both is: Nothing.
As to the first question, nothing “wrong” occurred at the moment Congress passed the Act. As the Majority has thoroughly discussed, the Convention itself is valid— *167 indeed, Ms. Bond unequivocally concedes that point. In turn, the Act, which implements the Convention, is valid as an exercise of Congress’s Necessary and Proper Power. That is because the Necessary and Proper Clause affords Congress “ ‘ample means’ ” to implement the Convention, and gives Congress the authority “to enact laws that are ‘convenient, or useful’ or ‘conducive’ ... to the ‘beneficial exercise’ ” of the federal government’s Treaty Power. United States v. Comstock, — U.S.-, 130 S.Ct. 1949, 1956, 176 L.Ed.2d 878 (2010) (quoting McCulloch v. Maryland, 17 U.S. 316, 4 Wheat. 316, 408, 413, 418, 4 L.Ed. 579 (1819)). There is no question that the Act is rationally related to the Convention; it faithfully tracks the language of the Convention. Enacting a statute that essentially mirrors the terms of an underlying treaty is plainly a means which is “reasonably adapted to the attainment of a legitimate end” — ensuring that the United States complies with our international obligations under a valid treaty. Comstock, 130 S.Ct. at 1957 (internal quotation marks and citations omitted); see also United States v. Lue, 134 F.3d 79, 84 (2d Cir.1998) (upholding a statute implementing a treaty where “[t]he Act here plainly bears a rational relationship to the Convention; indeed, it tracks the language of the Convention in all material respects”).
In examining the constitutionality of Congress’s exercise of its Necessary and Proper Power, we need not consider whether the prosecution of Ms. Bond is necessary and proper to complying with the Convention, as she would have us do. In other words, she argues that no nation-state would submit that the United States has failed to comply with its obligations under the Convention if the federal government did not prosecute Ms. Bond under the Act. But that is not the appropriate test. Examining the scope of Congress’s Necessary and Proper Power by definition requires us to examine the Act, not its enforcement. To determine if the Act is necessary and proper, we ask whether it bears a rational relationship to the Convention. See Comstock, 130 S.Ct. at 1956 (“[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.”). Ms. Bond’s actions fall plainly within the terms of the Act, and the Act bears a rational relationship to the Convention. So ends the Necessary and Proper inquiry.
The foregoing conclusion is enough to affirm Ms. Bond’s conviction. As the Majority correctly reasons, Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920), forecloses challenging a valid statute implementing a valid treaty on Necessary and Proper grounds or federalism grounds. See Maj. Op. at 163 - 65; Holland, 252 U.S. at 432, 40 S.Ct. 382 (“If the treaty is valid there can be no dispute about the validity of the statute” under the Necessary and Proper Clause).
But even if Ms. Bond were able to assert a federalism challenge to her conviction, she proposes no principle of federalism that would limit the federal government’s authority to prosecute her under the Act. Thus, as to the second question, Ms. Bond argues that if the statute is applied to her, and, is thus read to “criminalize every malicious use of poisoning,” then principles of federalism are violated by disturbing the division of power between the federal government and the states. (3d Cir. Argument at 15.) As appealing as the argument sounds — that a federal statute should not reach an essentially local offense like this — there is in fact no principled reason to limit the Act’s reach when her conduct *168 is squarely prohibited by it. The fact that an otherwise constitutional federal statute might criminalize conduct considered to be local does not render that particular criminalization unconstitutional. As the Supreme Court explained in Gonzales v. Raich, when “the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.” 545 U.S. 1, 23, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (internal quotation marks and citations omitted). The fact that the Act, which properly implements a valid treaty, reaches non-terrorist uses of chemical weapons leaves us powerless to excise such an individual instance. True, Raich involved Congress’s Commerce Clause Power. But the Majority is correct to apply its principle to this case, particularly in light of the Supreme Court’s rejection, in Holland, of federalism as a basis to challenge a statute implementing an otherwise valid treaty. See Maj. Op. at 166 n. 21; Holland, 252 U.S. at 432, 40 S.Ct. 382.
Ms. Bond continues to urge otherwise, asking us to consider the “world where the Supreme Court recognizes that the Tenth Amendment is primarily about protecting individual liberty,” (3d Cir. Argument at 74), and to find controlling here cases like New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), and Printz v. United States, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), in which the Supreme Court recognized that some acts of Congress, even if they are otherwise valid under an enumerated power, can run afoul of the Tenth Amendment. But this case is not like New York or Printz, in which Congress wrongfully commandeered states’ legislative processes and public officials. Nothing in those cases suggests a principle of federalism that would apply to this case.
Moreover, it is not enough to urge, as Ms. Bond does, that Pennsylvania law and authorities are equally able to handle, and punish, this conduct so that, from a federalism standpoint, we should leave the matter to Pennsylvania. That view simply misstates the law. We have a system of dual sovereignty. Instances of overlapping federal and state criminalization of similar conduct abound. But Ms. Bond argues that here, unlike the case with other federal crimes, no federal interest is being served by prosecuting every malicious use of a chemical. That argument fails for two reasons. First, there exists nowhere in the law a rule requiring that a statute implementing a treaty contain an element explicitly tying the statute to a federal interest so as to ensure that a particular application of the statute is constitutional. Cf. United States v. Wilson, 73 F.3d 675, 685 (7th Cir.1995) (reasoning that a jurisdictional element is not constitutionally required in a federal criminal statute enacted pursuant to Congress’s Commerce Clause authority). Second, even if we were to require that there be a clear federal interest, Ms. Bond incorrectly characterizes the federal interest that is represented by her prosecution as one in prosecuting every malicious use of a chemical. Rather, the federal interest served is twofold: combating the use and proliferation of chemical weapons, and complying with the United States’ obligations under a valid treaty.[2] See Chemical Weapons Convention, art. VII.1, 32 I.L.M. 800, 810 (1993) (requiring each signatory nation to, *169 “in accordance with its constitutional processes, adopt the necessary measures to implement its obligations under this Convention”). Additionally, whether there is a distinction, and where that distinction lies, between combating the use and proliferation of chemical weapons and prosecuting the malicious use of a chemical, is exceedingly difficult to discern.
In sum, Congress passed the Act, which is constitutionally sound legislation, to implement the Convention, a constitutionally sound treaty. Ms. Bond’s appeal generally to federalism, rather than to a workable principle that would limit the federal government’s authority to apply the Act to her, is to no avail.
The real culprits here are three. First, the fact pattern. No one would question a prosecution under the Act if the defendant were a deranged person who scattered potassium dichromate and 10-ehloro-10H-phenoxarsine, the chemicals which Ms. Bond used, on the seats of the New York subway cars. While that defendant could be punished under state law, applying the Act there would not offend our sensibilities. The application, however, to this “domestic dispute,” somehow does.
Second, the “use” of chemical weapons as prescribed in the Act has an admittedly broad sweep. See Maj. Op. at 154 n. 7; Chemical Weapons Convention, art. VII.l(a), 32 I.L.M. at 810 (requiring each signatory nation to “[p]rohibit natural and legal persons anywhere on its territory ... from undertaking any activity prohibited ... under this Convention, including enacting penal legislation with respect to such activity”). Because the Act tracks the Convention, however, Congress had the power to criminalize all such uses. Perhaps, in carrying out the United States’ treaty obligations, Congress could have created a more expansive exception for “peaceful purposes,” but it did not.
Lastly, the decision to prosecute is troubling. The judgment call to prosecute Ms. Bond under a chemical weapons statute rather than allowing state authorities to process the case is one that we question. But we see that every day in drug cases. Perhaps lured by the perception of easier convictions and tougher sentences, prosecutors opt to proceed federally. See Steven D. Clymer, Unequal Justice: The Federalization of Criminal Law, 70 S. Cal. L.Rev. 643, 668-75 (1997). There is no law against this, or principle that we can call upon, to limit or regulate it.
While the Majority opinion explores arguments regarding the limits of the Treaty Power, I find Ms. Bond’s argument to be much more limited in scope, although equally unsupportable. I agree that we should affirm the judgment of the District Court.

. As her counsel argued:
And it really inheres in the statute. It's not that there's anything wrong in the abstract with the United States ratifying this treaty. That’s not where the problem is.
The problem is either at the moment they passed the statute that necessarily went this far or at the point that it becomes applied in this kind of situation.
(3d Cir. Argument at 13.)

. I agree with Ms. Bond that states sometimes also bear some responsibility for ensuring compliance with our treaty obligations. See Medellín v. Texas, 552 U.S. 491, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008). But that fact does not nullify Congress's authority to pass treaty-implementing legislation so as to ensure uniform, nationwide compliance with our international obligations, nor does it suggest that Congress lacks the power to do so.